Good morning, Your Honors. Steve Mather appearing for the appellants, Conrad and Maria Janis. This case, in our view, illustrates the sometimes imperfect intersection between the estate tax on the one hand and the income tax on the other hand. In our view, this case involves essentially an artificial condition that is imposed by the estate tax, which essentially requires the value of the property of the estate to be considered under the assumption that it is all going to be sold at one time, that is, on the valuation date. There's no particular assumption that it would be sold to one person or in any particular manner, but by its essence, the estate tax requires a valuation on either the date of death or the valuation death, or the alternate valuation date. In our case, it is undisputed in the factual record below that the result of that forced, not forced sale, but that one time sale of all of these artworks that were the property of the estate would result in a reduction of about 60% of the value of the pieces that, if they had been sold individually, would have been sold over time. Even the IRS panel's analysis of this, which appears, the conclusion appears, I think, in the excerpts of record at 48, suggests that this isn't a reasonable way to liquidate a collection of artworks of this type. Nonetheless, it is the method that is required by the estate tax. It operates to the benefit of the beneficiaries, does it not? It certainly operates to the benefit of the estate in lowering the estate tax liability. Right. Therefore, it operates to the benefit of your clients. Sure, sure, it does. That benefit is, at least theoretically, accidental because you could have the same scenario in a situation in which you don't even have a taxable estate, so there's no savings to the estate, but then there would be, arguably, the burden to the beneficiaries by having what we would allege to be an artificially low value imposed as their income tax base. How did it get down to the $14 million figure? Because that wasn't the original figure. It went from 36 to 20-something, and then it went down to 14. I don't know. I wasn't the counsel in the trial court. I've spoken to the counsel in the tax court, and they weren't clear on how that came about. I believe it was the result of continued discussion after the art panel weighed in with their report. It would seem to me that the estate was saying, that's not enough. It's got to be lower than that. I would assume that's the case. There is some common sense appeal to your argument because you're going to liquidate after the estate and after the beneficiaries have received the property. You liquidate one by one or two by two or from time to time, as opposed to doing it in bulk, which would, of course, even on a regular market, would give you some kind of a discount. There's some appeal in that, but then we're faced with this doctrine of consistency which is imposed in these tax cases. Why doesn't that answer the question here? I think it again goes back to the different sorts of assumptions that you just pointed out. I don't believe there's an inconsistency in any representation that was made. If you're going to apply the estate tax valuation methodology, which is liquidate on day one, then you get one value. If you apply what everybody considers to be a more reasonable approach, then you get a different value. They aren't the same value, but there's not an inconsistency in between the estate tax and the assumption they inherit in the estate tax and the income tax, which isn't subject to that same thing. Isn't this a question of figuring out what the cost basis is against which you measure the gain? A subsequent gain, yes. Why wouldn't it go back to the cost basis that was determined at the time the estate was closed? There's a couple of reasons. Number one is that's not what the law requires. It would be simple if the law said whatever the basis is determined for estate tax purposes is the basis for income tax purposes. The law doesn't say that, and even the government doesn't argue that the law says that. In fact, there was one occasion in which a law was floated or a proposed bill was floated that would have resulted in that, an exact matching of those two concepts, and the law was not passed. I see. Then how do you figure the cost basis for determining the gain? The cost basis for determining the gain is the value in the hands of the beneficiary. There's specific language in the statute that it's a separate statute for the cost basis. That doesn't involve the same valuation methodology or assumption as, in essence, the liquidation value. In the hands of the beneficiary at the date of death, that's part of the problem. At the immediate time of death. It's the same date, yes. Yes. It's what was figured out here because of the blockage discount to be only $14 million. The valuation, if you dump it all, was the estate tax value. The valuation in the hands of the beneficiary, obviously there weren't in their case. There could have been 450 beneficiaries and they each got one piece of art. Part of the problem is there was five years between the date of death and this figure, but I'm not sure that's relevant anyway. In some ways, it's just an artificial construct of that's how the tax law was written. I take it you wish it weren't so. No. I'm not saying that. I'm saying that the artificial construct exists under the assumption that you're looking at different things being sold. That's precisely what the duty of consistency is designed to do away with. I don't mean this personally, but your ability on one hand to say when it benefits me this way, it's only X, but when it benefits me this way, then it's completely different and it's Y. It's a little bit like having your cake and eating it too. Isn't the duty of consistency designed to say you can't do that? No. The duty of consistency requires ... I think it's better analyzed as an estoppel argument is that if you make a factual statement, then you can't later change that. Exactly. You can't have your cake and eat it too. Right. What we're saying in this case is that the law values for estate tax purposes under one method and for income tax purposes on another method, those methods may not always lead to consistent results, but it's not based on a factual statement by the executors or the beneficiaries in either respect. They're just saying the value under this assumption is A and the value under this assumption is B. They may not be consistent, but we're not estopped from recognizing that dichotomy that exists under the law. What you're saying is if we have one Matisse, and that's the only thing in the estate and it's valued at $20 million, and that's the estate tax valuation, there's no discount because there's just one piece of art on the market. Then you sell it, then you wouldn't disagree. You'd be stuck with the $20 million, correct? Correct. If there's five Matisses, and then for estate tax purposes, they discount them because they're assuming they're all going to be sold in bulk, and you have to sell them as a package, right? On estate. But your argument is that if I don't have to flood the market with five Matisses at a time, and I can sell them off one by one by one, they have a different market value than the aggregate market value. Right. Even the IRS panel, as I pointed out before, suggested that nobody would sell all of these at once. Well, nobody except when you're determining the value for estate tax purposes, because that's what the law requires. Has any case ever agreed with you? In what sense? Well, that supports the argument that you're making. Which argument? You get to have two figures. You play with two figures at the same time. Well, the case that we cite in the brief, the Augustus case, recognized that situation. It's a slightly different scenario. There was a blockage discount claim for, I believe, some Woolworth stock that was held, a large block of Woolworth stock that was held by an estate. And then one of the beneficiaries was arguing for an income tax basis that was different than the estate tax determined basis. And the court in Woolworth allowed that beneficiary to establish a different basis. One way off from either of this is for your client to say, we don't want the blockage discount. We'll pay the pay tax based on the $35 million. Well, at this point, it's too late for that. I know. I mean, that's the way out of this. I mean, if you don't like it, you don't have to take it. Well, that's true. I mean, but as I said, I mean, the law does not impose an exact equality of these two amounts. That's what backs you into the problem of saying, OK, we'll go with that figure and then turning around and saying, and now we're going to use the other one. What's the best authority for your argument, do you think? Well, I think the Augustus case is at least an illustration of that, of the case. I would say, pardon me, I don't know of a specific instance where this exact issue was decided in the same manner. This issue would come up any time. Well, in most estate tax cases I've seen, they always take a discount. You know, it's the same as a closely held corporation. Of course, they take a discount off the value of that. If it's a huge mass of stock, like you're talking about, they take a discount off that. If it's multiple items, you know, liquidating parts of a company that's held in a partnership so that it's not in a corporate status, they take a discount. So every time that happens, in the end, you have stuff going out the other end. Eventually, it gets resold. And it seems like nobody, or never has a tax court or any circuit court said, you can have different valuations. Right. Well, I don't know. There's very few situations where you wouldn't take the discount on the left hand end, you know. From the cases that I read, there were really only two instances that involved this kind of blockage discount where we would argue they overlay this impractical assumption that everything has to be liquidated at once. Those are for artworks. There's a Calder case, an O'Keeffe case, and the Smith case, which all involved art collections, which would experience this type of phenomenon. And then, as you pointed out, the large blocks of stock in a thinly traded company. Right. And in that scenario, that is the two scenarios that I've seen in the tax area that the companies have recognized. But is the blockage concept any different than discount for sale or any other of the discounts that are taken? It's kind of the opposite, actually, because the discount that, as you mentioned for the family limited partnerships, that is based on the fact that what the person receives, you take a company, you split it 10 ways, and you get, so each person gets one tenth of the company. What, as one tenth of the company, the faceless hypothetical market out there is only willing to pay this discounted amount because they don't have control, they don't have the right to force decisions, and they don't have a saleable interest in the enterprise. So in that sense, it's measuring it as to what this person got and what they could sell it for. The corresponding, in our case, we're saying, well, for estate tax purposes, at least, we don't look at what the person got, we look at the thing. I understand that might be a little different, but is your situation any different than the estate tax situations where you have inventory? And, of course, you don't want to, a company isn't going to sell all its inventory, you know, on the day that the estate is settled, so they give you a discount in that. That's also a fairly typical discount that's taken in tax cases, but isn't that the same thing? And then it flows through to the corporate or the business entity valuation. Yeah, I personally haven't experienced that type of discount. But the inventory discount, it would seem, in a sense, you could look at this as an inventory discount case, because what we have is we have a business that was able to sell its artwork to the tune of $2 or $3 million a year and $36 million worth of inventory. So you've got to have a $15 million, I'm sorry, a 15-year turnover factor. That would impact the amount of the discount, and certainly in an inventory context, if you had a similar length of turnover for your inventory where you had a 15-year supply of your product on hand, I think you would see the same sort of factor in play. I'm not sure the Augustus case helps you all that much. It does, it says, Petitioner argues that the determination of value for purpose of estate tax does not conclusively establish fair market value, and that our gain or loss upon sale must be computed on the basis of actual fair market value. The problem in this case, it says that there's no evidence supporting the application of the blockage rule, so they don't pay any attention to it. So it's a question of fact. It's a little different. Well, in this case, we argue there's no question of fact because we have a stipulated value for the individual pieces, which is $36 million, and the stipulated value of the collection as a whole, which is $14. So in our view, the factual issue is resolved in this case, but the concept illustrated in the Augustus case, I think, is valid, which is, you know, it's to a degree apples and oranges. Now, in most of the cases, an apple is an orange because you only have one Matisse. So what I can't tell from the Augustus case, though, was whether there was any agreement that this was the correct figure. It's vague on that. The duty of consistency wasn't involved in the Augustus case. It probably didn't exist then. I mean, the duty of consistency is kind of a common, a popular creation. I know, and that's why I'm not sure it helps you. Well, I think it establishes, you have two separate issues. The underlying issue of what does the tax law require? I think it helps us on that. On the duty of consistency issue, probably doesn't cut either way because it doesn't look like it was an issue that was presented to the court. So you're attacking the duty of consistency rule sort of with your left hand. Well, you know, a previous case that I had some years ago established it in this circuit. So I would like to go back and reinvent the wheel, but I don't, I'm not, I'm not really attempting to do that. What I'm saying is that there is nothing inherently consistent, inconsistent with saying the value for estate tax purposes is 14 million and then arguing the value for which involves different valuation assumptions is 36 million. I don't think those are inconsistent statements. And just if I could mention another point that I raised in my brief is that if the government had the chance. You have about two minutes if you want to save time for rebuttal. Thank you. There's there's multiple ways to close an audit. The government could have easily closed this audit by saying, all right, we're going to enter in a closing agreement. So 14 million is the value for estate tax purposes and the beneficiaries are going to report that as their basis. They didn't do it. And there's a series of cases in this circuit that say that. That struck me as an argument that relies on form over substance. They didn't use the right form. Well, I mean, but this is, this is the gist of how, I mean, this is the real grist of how the government resolves cases is you, you know that there are varying degrees of certainty that you can get in one and they chose the least final and then complained that the options that were presented to us, we utilized. So, but I will reserve my remaining time. Thank you. Good morning, your honors. May it please the court. I'm Francesca Tamami, counsel for the Commissioner of Internal Revenue. First, I'd just like to turn to the language of the code and the regulations that are at issue, because I think the taxpayer in this case is suggesting that the valuation for estate tax purposes is really quite different from the valuation for income tax purposes and that they can be two different things. But I think if you take a look at the actual language of the code and regulations, section 1014 of the Internal Revenue Code says that the basis of property in the hands of the person acquiring the property from a decedent is a fair market value of the property at the time the decedent's death. The Treasury regulations establish that the purpose of this section is to provide a basis for property that is equal to the value that was reported for federal estate tax purposes. So the regulations do expressly link those two valuations. In a revenue ruling and in subsequent court rulings, it was established that it's not always exactly consistent, that it's a rebuttable presumption, but that the value reported for estate tax purposes is prima facie the basis for income tax purposes. It seemed to me if I read that statute that we're focusing on the wrong words, because to get to the issue of fair market value, you have to determine what the property is. And so what I think the taxpayers are saying, and maybe they didn't articulate it this, is that the property, you're talking about two different pieces of property. One piece of property is a collection of art, and another piece of property is an individual piece of art. Why isn't that a legitimate way when you then run that through 1014? I understand. I think that is a legitimate way of viewing, perhaps, of making the argument for two different valuations in some case, but I think the record in this case doesn't support that argument. OK, so let's go and, so do you agree that there is a difference, that you could say property, something that is a collection of artwork, is an aggregate piece of property, but that the individual pieces of artwork, the Matisse, the Calder, the Picasso, they also are pieces of property? I think that, as I said, I think that could be the case in other cases. Why isn't it here then? Because the record shows that in this case, the artwork, the gallery was operated as a business by Sidney Janis during his lifetime. When he died, the IRS Art Advisory Panel, when the estate tax audit was conducted, the IRS Art Advisory Panel recommended applying a blockage discount to the gallery's inventory to reflect the fact that this was indeed a collection of artwork that comprised the inventory of an ongoing business. They listed several factors, several reasons for applying the blockage discount, and many of these factors were to reflect the fact that this was an ongoing business, that it was going to take time to sell pieces of artwork, to account for various intangibles associated with that business, the reputation of the gallery. When the gallery was then transferred to a trust, the trust continued after Sidney's death to operate the gallery as a business. After the trust was terminated in 1995, Conrad and Carroll received their interest in the gallery, and then they subsequently contributed their interest in the gallery to a partnership, which continued during the tax years at issue to operate the gallery as a business. So essentially, the blockage discount was applied because the collection of artwork was viewed as the inventory of a business during the estate tax audit. During the tax years at issue, the gallery continued to be operated as a business. This collection of artwork continued to be the inventory of an ongoing business, as opposed to Carroll and Conrad taking home, divvying up the property. So I understand. So you're really saying it is like the inventory situation. Correct. If you didn't have an ongoing business and somebody has all this, half of this artwork in their house and they die and they say, you know, I'm going to give a discount. If they value the artwork as of the date of death, would there be, in your view, a discount because you would have to be looking at selling all of that and flooding the market at the same time with all that? Or would you have valued it individually? I guess it's hard to say. In the cases that have looked at estates of artists where they held a large amount of forced liquidation in order to come up with the money that would be required to pay the estate tax. So in those cases, in that situation, without giving anything away, I guess there would be a stronger case for applying a blockage discount in the estate tax context. But then when the paintings are distributed to various beneficiaries who do whatever they want with them, maybe hang them in their house, sell them 20 years later, there would be undiscounted value. So you're saying that's not this case? That's not this case. If you look closely at the Schedule C's, which reported the operations of the gallery for all the tax years at issue, Schedule C is the particular form to report profit or loss from a business. It's clear that the gallery was an operating business. There are deductions for advertising, insurance, rent, taxes, wages, employee benefit programs. In one year, I think it was 1990, the Trust even purchased an additional piece of artwork to add to the inventory. On all of the relevant returns that were examined by the commissioner, the artwork is listed as inventory. The relevant line item that was adjusted was the value of inventory at beginning of the year, which was used to determine cost of goods sold. You're saying that the estate consisted of not just the artwork, but they valued the business as a business? That's correct. In fact, when you look at the estate tax return, obviously the largest asset of this business was the collection of artwork. So a substantial component in valuing the gallery as a whole. I think those aspects were things like goodwill were taken into account in applying the blockage discount to the value of the artwork. But the ultimate value of the gallery as a whole consisted of the value of the inventory added into that were cash and cash equivalents. I think about eight million dollars worth of cash and cash equivalents that the gallery held. Less about fixtures, were there fixtures? Yes, I think they rented their property, but they had various fixtures. If you look closely, like I said, at the Schedule C's, there's lots of listings for the various fixtures, frames, exhibition booths, commissions paid, and all of those aspects went into valuing the gallery. If you look at the estate tax return, in fact, what was valued, the property listed is interest in Sidney Janis Gallery, and it has an overall value of which the discounted value of the artwork is one component. And so when the tax court in its memorandum decision says the inherited property was the art gallery as compared to the individual pieces in a collection. Correct. That's important. Right. And in fact, I'd like to point out the way the tax court framed the issue at the time. It said the property inherited an art gallery can calculate the cost of goods sold using the undiscounted value of the gallery's collection of artwork rather than the discounted value. And so they really did frame the question as a matter of valuing this inventory of artwork. I'd just also like to turn to just to turn to the duty of consistency for a minute. I think the tax court correctly held that the taxpayer was bound to the estate tax value of fourteen point five million dollars under the duty of consistency. And this court's opinion in the state of Ashman, I think, addresses a lot of the the arguments that were raised by the taxpayer in his in his brief. Just turning to this one point that the taxpayer raised of the Form 890 that the commissioner used to secure the value of the artwork. If you look at the record, first of all, as an initial matter, I would like to point out that in the proceedings below, the taxpayer never contested that he did agree to value the artwork of thirty six million dollars. And if you look in the trial memorandum, although the record in this case, I think, as Judge Trott pointed out, doesn't really explain how that value was reached. The taxpayer's trial memorandum filed below states that the estate and the commissioner agreed that the gross value of the artwork of thirty six million was correct, but that the appropriate blockage discount was greater than the amount determined by the panel. They determined that the discounted fair market value of the artwork was fourteen point five million dollars. Relying on advice of the estate's accountant and tax advisor, David Silverman, petitioners as executors of the estate agreed to the gross and net value of the artwork and on or about January 27th, 1994, agreed to the adjustment made by the commissioner. That comes from a trial memorandum? That comes from the trial memorandum, which is a docket entry 20, page five. So I think that that reflects the agreement that is not really the record doesn't show when this agreement was reached, but that the commissioner and the taxpayer at some point agreed to further discount the value of the inventory at fourteen point five million dollars. So for purposes of the duty of consistency, there was an agreement of fact, an agreement regarding the value of this inventory. The commissioner relied on that agreement and assessing the estate tax. And now that the period of limitations for assessing additional estate taxes passed, the taxpayer is attempting to recharacterize the situation in a manner that would harm the under a state of Ashman, the duty of consistency is called for. Unless the court has further questions. Thank you. I think the notion that this is somehow a business that's being valued is completely misstates a record below what the tax court did. Clearly did. However, they may have phrased the issue is that there were agreed that they valued this gallery, if you will, as consisting of three components, artworks, cash and cash equivalents and liabilities, and then proceeded. The only contested issue was the value of the artworks. There was no notion of goodwill or any kind of a going concern value to this. However, this collection may have been presented after the death of Sidney Janis is irrelevant. There is no question of evaluation of a quote unquote gallery in this case. The issue is the valuation of the artworks as a collection. What passed through the estate? Was there a business that passed through? There was a, on the date of his death, there was a functioning business that consisted of the cash and the artworks, which was the art gallery. Yes, it was the art gallery. So that actually is that passed as an entity through the estate, did it not? A sole proprietorship. There was no, there was no entity. I mean, it was an enterprise. He wasn't just holding them for his personal use, but I think the distinction between a personal collection and one that's being held for resale is irrelevant in the context of this case. And then the other point is that the trust by its own terms terminated on his death and the trust supposedly held this business, but it by its own terms terminated on his death and whatever was done afterward was just in the nature of the administration of the estate. But the bottom line is that the distinction between a business and a personal collection is irrelevant in this case because clearly the IRS, the taxpayers value the artworks, the IRS valued the artworks and the tax court reached the issue of what the artworks was as a collection. The tax court memorandum decision says Conrad and Carol agreed that the discounted value of the collection was $14,500,000. I guess that much come from the trial memorandum. So there was an agreement. Yes. That the discounted value was $14,500,000. Yes. For estate tax purposes. That's correct. We continue to argue. Doesn't that erase your intended, your attempted distinction between this form, that form and another form or ways of closing? No, no, it doesn't. I mean, we still maintain that $14,000,000 is the correct value for the estate tax. They could have stipulated that it would also be the correct value for other purposes. They absolutely could have and they did not. And the record in the case stipulates that the value of the pieces is $36,000,000, which is what we used for income tax purposes. What's the amount of money at issue here if you win this compared to? How much money is it? Um, I'm, I don't know, I don't have that at the top of my head. It's hundreds of thousands of dollars. All right. Thank you very much. Thank you. Thank you both. The case just argued will be submitted. The court will stand and recess for the day.
judges: Reinhardt, Trott, McKeown